IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: ROBIN KENDALL PARKER            CASE #19-02418 NPO
                                                                    CHAPTER 13

## MOTION FOR APPROVAL TO SELL PROPERTY
## FREE AND CLEAR OF LIENS

**COMES NOW Debtor, by and through counsel,** in the above named and numbered bankruptcy proceeding, and files this Motion for Approval to Sell Property Free and Clear of Liens, and would show unto the Court the following, to-wit:

1. That Robin Kendall Parker (hereinafter referred to as "Debtor") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on July 5, 2019.

2. That the Debtor owns a commercial building being located at 321 E. 15th St., Yazoo City, MS, being more fully described as follows:

> **LOTS 63, 64 & 65 less and except the westerly 30 feet thereof, as shown by map or said subdivision of Fairgrounds, Lintonia Plantation, Yazoo County Mississippi, being a part of Lots 15, 16 & 17, a part of Sections 21 and 22, Township 12 North, Range 2 West, as such map appears of record in Plat Book 1 at Page 5 in the office of the Chancery Clerk of Yazoo County, Mississippi.**

3. That the Debtor proposes to sell said property to T&B Real Estate Holdings, LLC for the total sum of $90,400.00, which is believed to be fair market value. A true and correct copy of the Property Agreement is attached hereto and incorporated herein as Exhibit "A".

4. That Bankplus has a valid Deed of Trust on this property in the amount of approximately $90,116.09 as of September 11, 2019. This lien shall be satisfied in full at the closing of the sale.

5. Debtor moves that he be allowed to sell the subject property to T&B Real

Estate Holdings, LLC for $90,400.00 with the proceeds from the sale to be used to satisfy the indebtedness to BankPlus, the first lienholder, and any reasonable closing costs and that any remaining proceeds be used to pay towards any existing tax liens on said property.

**WHEREFORE, PREMISES CONSIDERED,** the Debtors respectfully request that this Court enter an Order authorizing him to sell real property located at 321 E. 15th St., Yazoo City, MS 39194 for the total sum of $90,400.00 as set forth herein, and that he be allowed to transfer the property to the purchaser free and clear of all liens and for such other relief as is deemed proper under the circumstances.

**THIS** the 21 day of Oct, 2019.

Respectfully submitted,

_____
Attorney for Debtor

J. Thomas Ash, MSB#1664
Jordan Ash, MSB#102993
Ash Law Firm, PLLC
P.O. Box 13219, Jackson, MS 39236
601-981-5600 (jordan@ashlaw.ms)

### CERTIFICATE OF SERVICE

I, Jordan Ash, Attorney for the above listed Debtor(s), do hereby certify that I have this date mailed or by electronic notice a true and correct copy of the above Notice and Motion for Approval to Sell Property Free and Clear of Liens to the Trustee, Hon. Harold J. Barkley, Jr., P.O. Box 4476, Jackson, MS 39296-4476; U.S. Trustee, 501 East Court St., Ste 6-430, Jackson, MS 392601 and all scheduled creditors (see attached matrix).

**THIS** the 21 day of Oct, 2019.

Respectfully submitted,

_____
Attorney for Debtors

```
Label Matrix for local noticing        U.S. Bankruptcy Court                    BankPlus
0538-3                                  501 East Court Street, Suite 2.300       1068 Highland Colony Parkway
Case 19-02418-NPO                       P.O. Box 2448                            Suite 200
Southern District of Mississippi        Jackson, MS 39225-2448                   Ridgeland, MS 39157-8807
Jackson-3 Divisional Office
Wed Oct 16 15:41:40 CDT 2019

Bankplus                                Department of the Treasury               Equifax
P.O. Box 1087                           Internal Revenue Service                 Attn: Bankruptcy Dept.
Yazoo City, MS 39194-1087               P.O. Box 7346                            P.O. Box 740241
                                        Philadelphia, PA 19101-7346              Atlanta, GA 30374-0241


Experian                                IRS (Notice Only)                        Mississippi Department of Revenue
Attn: Bankruptcy Dept.                  % US Attorney's Office                   Bankruptcy Section
P.O. Box 2002                           501 E. Court St,#4.430                   P.O. Box 22808
Allen, TX 75013-2002                    Jackson, MS 39201-5025                   Jackson, MS 39225-2808


Simpson Law Firm                        Transunion                               United States Trustee
P.O. Box 1410                           Attn: Bankruptcy Dept.                   501 East Court Street
Ridgeland, MS 39158-1410                P.O. Box 1000                            Suite 6-430
                                        Crum Lynne, PA 19022                     Jackson, MS 39201-5022


Harold J. Barkley T1 Jr.                Jordan L. Ash                            Robin Kendall Parker
P.O. Box 4476                           Ash Law Firm PLLC                        370 Lakeview Drive
Jackson, MS 39296-4476                  PO Box 13219                             Yazoo City, MS 39194-8518
                                        Jackson, MS 39236-3219


End of Label Matrix
Mailable recipients    14
Bypassed recipients     0
Total                  14
```

Exhibit "A"

# Property Agreement

THIS AGREEMENT is made on October 15, 2019, between Robin Kendall Parker (hereinafter "Seller"), of 370 Lakeview Drive, Yazoo City, Mississippi 39194, and T&B Real Estate Holdings, LLC as represented by Jimmy Bowen, its Owner (hereinafter "Buyer"), of 409 CUMBERLAND CT, MADISON, Mississippi 39110 for the sale of the below described property pursuant to the following terms and conditions:

### Legal Description and Address

The real property located at 321 E 15th Street, Yazoo City, Mississippi 39194, together with all buildings, improvements and fixtures constructed or located on the Land (Buildings) and all easements and rights benefiting or appurtenant to the Land (collectively the Real Property).

The Real Property's legal description is as follows:

LOTS 63 64 & 65 LESS 30' OFF WEST SIDE 93A/250 337A/326 OP:3275P00137 028(K) DEED- 337A 326 11/15/2007 DEED- 293A 804 02/21/2003 FAIRGROUNDS S/D OF LOTS 15, 15 & 17 LINT PLNT PLAT BK 1-5 &6

### Purchase Price

Subject to the following conditions, Buyer shall make final payment for the property at closing in the total amount of $89,900.00 which accounts for the previously deposited sum of $500.00 in earnest moneys for a total purchase price of $90,400.00. Buyer agrees to pay the entire amount at closing. Concurrent with the execution of this Agreement, Buyer has deposited with Seller or Seller's Escrow Agent the sum of $500.00, (hereinafter referred to as "Earnest Money") as earnest money and a partial payment of the consideration under the Contract. In the event that the purchase and sale shall be consummated pursuant to the terms of said contract, Seller or Seller's Escrow Agent shall, at such closing, deliver to Seller the Earnest Money, and Buyer shall be given credit toward the purchase price for the payment of the Earnest Money.

### Closing Costs

In closing this transaction, Seller shall be charged with the following:

(a) the amount of real estate taxes and assessments prorated up to and including the date of transfer of title;

(b) the cost of any transfer tax;

(c) One Half of the cost of a title report, title search, and title guaranty policy in the amount of the purchase price;

(d) the cost of paying off and satisfying any mortgage indebtedness for which Seller is liable, together with the cost of any mortgage cancellation, recording fee or other costs incident to the satisfaction of any such indebtedness;

(e) the cost of any required brokerage commission;

(f) one half of the escrow fee; and

On closing, Buyer shall be charged with the following:

(a) any cost of financing this transaction which Buyer arranges for;

(b) the cost of filing the deed for record;

(c) One Half of the cost of a title report, title search, and title guaranty policy in the amount of the purchase price;

(d) one half of the escrow fee; and

(e) title Insurance if buyer elects to be furnished with title insurance;

and immediately thereafter, the escrow agent shall deliver to Buyer the title guaranty or title insurance, as the case may be, the record deed or Recorders' receipt, any prorations to which Buyer is entitled, and all other funds or documents due Buyer.

**Title Requirements**

Seller shall convey to Buyer good and marketable title to the property, by good and sufficient general warranty deed with all dower rights released. The deed shall be deposited into escrow on or before the closing date.

Seller shall accompany Seller's deed with a title guaranty policy in the amount of the purchase price, paid for as outlined herein, issued by a general title Company ("title company") in its customary form, guaranteeing record title to the Property to be good in Buyer subject only to the exceptions to be contained in the deed. However, Buyer may elect to be furnished with an Owner's Fee Policy of title insurance ("title insurance"), in the amount of the purchase price, insuring marketable title to be good in Buyer, subject only to the exceptions to be contained in the deed. In such event, in lieu of a title guaranty policy, Seller shall furnish Buyer with title insurance. Seller shall pay that portion of the costs which would have been incurred had a title guaranty policy been issued, paid for as outlined herein, and Buyer shall pay the remaining costs.

Immediately upon the execution hereof, Seller shall order from the title company a preliminary title report, with a special tax search included, in the form of a commitment to issue the required title policy requested by Buyer ("title report"). A copy of the title report shall be delivered to Buyer. Within 10 days after Buyer receives the title report, he shall notify Seller and the title company of

all restrictions, reservations, limitations, easements, and conditions of record ("title defects") disclosed in the title report that are objectionable to Buyer. If Buyer notifies Seller of title defects, Seller shall cure or remove the same by the closing date. Seller shall remove all objectionable title defects that may be removed by the payment of money, and shall take reasonable steps necessary to remove all other title defects.

On the closing date, escrow agent shall notify the parties whether the title company can issue its title guaranty or title insurance, showing as exceptions only those items in the title report to which Buyer did not object. If the escrow agent notifies the parties that (a) the title company will issue such title guaranty or title insurance, this transaction shall be consummated in accordance with the terms and provisions of this Agreement, or (b) the title company will not issue such title guaranty or title insurance, and if Buyer does not immediately waive the title defects claimed by the escrow agent to prevent such issuance or Seller does not cure the defects within the permitted period, this Agreement shall be null and void, the escrow agent shall return to the parties all funds and documents previously deposited by them into escrow, and the parties shall be fully released from any liability or obligation hereunder, except that Seller shall pay the full cost of the escrow and the title company's charges.

If Buyer waives the title defects preventing issuance of the title guaranty or title insurance by notifying the title company and the escrow agent, or if Seller has cured the title defects, the obligations of the parties shall not be affected by them.

**Warranties**

Seller warrants and represents to Buyer as follows:

(a) Encroachments. All improvements now on the Property are entirely within the boundary lines of the land described as the Real Property, and no other adjoining property encroaches upon the land;

(b) Mechanic's liens. All work and labor performed and all materials furnished with respect to any improvements or repairs to the Real Property have been paid in full, and there will be no mechanic's liens or the possibility of any in connection with any such work, labor and materials performed on or furnished to the Real Property;

(c) Violations. Seller has no knowledge of any outstanding notices or orders from any governmental authority with respect to the condition of the Property or its repair, or with respect to any claim of a violation of any laws, ordinances, zoning codes, building codes or orders;

(d) Structural soundness. To Seller's best knowledge and belief, the personal property included as a part of this transaction and the improvements on the Property are structurally sound and in good condition and repair, including, without limitation, the roof, foundation, walls, heating and cooling system, plumbing, water and electrical systems; and

(e) Assessments. All improvements made by the local government that now benefit or will benefit

the Property upon completion have been assessed against it as of the execution date of this Agreement.

All of Seller's foregoing warranties and representations shall be continuing in nature, shall be effective on the closing date, and shall survive Seller's delivery of the deed to Buyer and the consummation of all matters and things at the closing.

### Inspection and Acceptance

Prior to the closing date, Seller agrees to correct, at Seller's expense, any violations found in connection with the inspection done to comply with the point-of-sale or similar ordinance required by the local governmental authority, if any. Evidence in writing that the corrections were made to the satisfaction of the local governing authority shall be given to Buyer prior to the closing date.

### Prorations

All general and special real estate taxes and assessments shall be prorated by the escrow agent as of the date the deed is filed for record, using the rate and valuation shown on the last available tax duplicate. If the proration does not fully reimburse Buyer for all real estate taxes and assessments accrued and unpaid with respect to the Property as of the record date of transfer of title, Seller shall promptly reimburse Buyer that amount accrued in excess of the proration credit upon the official certification of the real estate tax duplicate for the year in which transfer of title occurs. The escrow agent shall prorate any rents as of the date the deed is filed for record.

There shall be no proration of utilities. Seller shall cause the meters to be read for water, electricity, gas and other utilities, if any, as of the date of delivery of possession, and shall pay all utility charges to the date of the readings, after which the charges shall accrue to Buyer. The sum of $200 shall be held in escrow as security for the payment of utilities until Seller deposits into escrow receipts evidencing such payment.

### Financing

This Agreement is subject to Buyer obtaining a commitment 30 days before December 15, 2019, from a reputable lending institution of a mortgage loan of at least 80% of the purchase price payable in equal constant monthly payments over a period of 25 years or longer, with interest at the prevailing rate. Buyer shall endeavor in good faith to obtain a mortgage loan on the above or more favorable terms, but if Buyer is unable to obtain such a commitment by the aforesaid date, this Agreement shall be null and void, all funds and documents shall be returned to the respective parties, and neither party shall have any rights against the other.

### Closing

Closing is the date on which the Seller executed deed is released to Buyer. The closing date is designated as December 15, 2019, provided there are no unforeseen delays such as clearing title. Time is of the essences, and in no event shall closing be later than 30 calendar days after

designated closing date, unless an extension is agreed upon in writing between Buyer and Seller.

## Escrow Agent

This transaction shall be closed in escrow with an escrow agent of Buyer's choice ("escrow agent"). Buyer shall deposit with the escrow agent an executed counterpart of this Agreement, which shall serve as the escrow instructions. The escrow agent may attach its standard conditions of acceptance, but if they are inconsistent or conflict with the terms of this Agreement, this Agreement shall control.

## Closing Documents and Funds

If on the closing date (1) the escrow agent then has on hand all necessary funds and documents to complete the transaction, and (2) the title company has stated that it shall be in a position to and will issue and deliver, upon the filing of the deed for record, the required title guaranty policy or title insurance, the escrow agent shall thereupon file for record the deed and all other required instruments and shall deliver to each party the funds and documents to which it is entitled, together with the agent's escrow statement.

Both Buyer and Seller have to submit all documentation and other information requested by the title company/escrow agent needed to close the transaction. The parties may have to fix a date and time with the title company/escrow agent to close the transaction.

## Possession

Seller shall deliver possession of the Property as of the closing date, in the condition as warranted by Seller and in no event in any worse condition than the condition as of the date of execution of this Agreement, less reasonable wear and tear.

## Risk of Loss

Risk of loss or damage to the property by fire or other casualty occurring up to time of closing is assumed by Seller. If the building or buildings or any other improvements on the Property are damaged or destroyed before transfer of record title, and the damages are $3,000 or less, this Agreement shall continue in full force and effect and Seller shall immediately assign to Buyer all of Seller's rights to the resulting insurance proceeds. If the damages are greater than $3,000, Buyer may either (a) continue this Agreement in full force and effect, and Seller shall immediately assign to Buyer all of Seller's rights to the insurance proceeds, or (b) rescind this Agreement, and all money, papers, or documents deposited by the parties shall be returned to them. Buyer shall assume risk of loss after record title to the Property is transferred to him. There shall be no proration of insurance. Seller shall retain his insurance until record title is transferred to Buyer, and Buyer shall procure his own policies of insurance to be effective from and after the date title to the Property is transferred to Buyer or his nominee. If buyer and seller agree to allow buyer access to the premises before closing and buyer elects to make improvements to the property before closing then all improvements are for the benefit of seller if the sale does not close for any reason.

**Release of Dower**

Seller's spouse (if Seller is married), if not already a party, joins in the signing of this Agreement to evidence his or her consent to the terms and provisions hereof, including the obligation to release of all dower and other marital rights in the Property upon its conveyance to Buyer.

**Notice**

All notices under this Agreement shall be deemed to be sufficiently given if personally delivered or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed to the parties abovementioned addresses.

**Miscellaneous Provisions**

(a) Governing Law: The laws of the State of Mississippi shall govern the Agreement.

(b) Parties Bound: This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

(c) Severability: In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision. This Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(d) Merger Clause: This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between Buyer and Seller and Agent, if any, with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters.

(e) Force Majeure: In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Agreement to be performed by the party (other than monetary obligations) and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the reasonable control of the party so delayed or hindered (a "Force Majeure Event"), then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay. Lack of financial resources on the part of either party shall not be a Force Majeure Event.

(f) Amendments. This Agreement may be amended by the parties only by a written agreement.

(g) Attorneys' Fees: If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees in

addition to any other relief to which that party may be entitled.

(h) Headings: Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

(i) Other than those items specifically mentioned herein ,buyer purchase the property "AS IS" and is required to preforem its own due dilligence.

SELLER:

_Ken Parker_____     _10/15/19_____

Robin Kendall Parker                                              Date


BUYER:

_[signature]_____     _10-15-2019_____

T&B Real Estate Holdings, LLC                            Date

By Jimmy Bowen, its Owner